AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

APR 0 3 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Apple IPhone A1660, FCC ID: BCG-E3085A; HTC phone, IMEI: 358869073036804; LG phone, IMEI: 353191-09-007944-3 | ) |

Case No. 1 8 M J 1 5 4 1

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location)*:  See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841, 846___ , and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ehab Rahman, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/3/18__

_____
*Judge's signature*

City and state: San Diego, California

Honorable William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Ehab Rahman, being duly sworn, declare and state:

## INTRODUCTION

1.      This affidavit supports an application to search the following target property:

a.      a black Apple cellular telephone, Model IPhone A1660, FCC ID: BCG-E3085A ("**Target Telephone 1**");

b.      a white HTC cellular telephone,  IMEI: 358869073036804 ("**Target Telephone 2**");

c.      a blue LG cellular telephone, IMEI: 353191-09-007944-3 ("Target **Telephone 3**");

(collectively the "**Target Telephones**");  more particularly described in attachment A, incorporated herein.

2.      Based on the information below, I have probable cause to believe that in the property in paragraph 1, are instrumentalities and contain evidence of crimes. Specifically, I have probable cause to believe that within the above property are instrumentalities or contain evidence of Title 18 §§ 956 and 1201, Conspiracy to Kidnap and Kidnapping; and Title 21, §§ 841, 846, 952, 960, and 963, Conspiracy to Distribute, Distribution, Conspiracy to Import, and Importation of Controlled Substances.

3.      The evidence to be searched for and seized is described in attachment B, incorporated herein.

1

4.     The **Target Telephones** were seized from Ricardo Eduardo CHAVEZ-Gutierrez ("CHAVEZ") on March 15, 2018, when he was arrested for being an illegal alien unlawfully residing within the United States.

5.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien and drug smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephones**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates and times are approximate.

## EXPERIENCE AND TRAINING

6.     I am a Border Patrol Agent - Intelligence ("BPAI") with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal agent with the USBP since 2006, having graduated from the USBP Basic Border Patrol Training Academy. The 19-week academy curriculum covers basic police tactics and specialized training in the Immigration and Naturalization Act ("INA"), criminal law, statutory authority, as well as cross training in Title 21 United States Code, Controlled Substance Act ("CSA") violations and cross training in Title 19 United States Code, Customs law violations.

7.     I have been trained in investigating various violations of federal and state law including but not limited to alien smuggling, drug smuggling/trafficking,

2

weapons smuggling, document and benefit fraud, identity theft, and bulk currency smuggling. I have worked with and learned from other agents and criminal investigators with extensive experience conducting these and other investigations as well. My past duties with the USBP included patrolling the US/Mexican border in order to prevent the illegal entry of aliens, illegal importation or exportation of illicit contraband to and from the United States and to arrest those who are in violation of immigration law or any other applicable federal or state law.

8.     I am currently a BPAI assigned to the Chula Vista Border Patrol Station. As a BPAI, I regularly engage in observations, surveillance, searches, records analysis, apprehensions, criminal and administrative evidentiary seizures, and the preparation of criminal and administrative cases for prosecution. I regularly conduct interviews of suspects and witnesses in order to support criminal and administrative charges. Through my training and experience, I have gained a working knowledge of the structure and operations of criminal organizations.

9.     Through the course of my career, through training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a common practice for drug and alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is the case for any organization involved in the smuggling, trafficking, movement or distribution of illicit commodities, whether they be human cargo, controlled substances or other goods. Typically, organizations smuggling across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during and following the

3

smuggling event. These communications typically consist of instructions on how/where to cross or pick up drugs, directions of travel, and locations for delivery to stash houses and/or sponsors.

10.     Drug smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the origination and destination phone numbers of calls placed to and from cellular and digital telephones. Through the course of my career, I have arrested and interviewed numerous drug and human smugglers.   Through these experiences, I have become familiar with the activities of those who coordinate trafficking events and the practices used for the drivers/smugglers they employ locally, including transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement officers.

11.     The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

12.     By virtue of my employment as a BPAI, I have performed various tasks, which include, but are not limited to:

        a.      Functioning as a surveillance agent and thereby observing and

recording movements of persons smuggling aliens and controlled substances and those suspected of smuggling human or controlled substances;

      b.    Interviewing witnesses, cooperating individuals, and informants relative to the illegal smuggling of aliens and controlled substances and the distribution of monies and assets derived from the illegal smuggling of aliens and controlled substances; and

      13.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug and alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Typically, load drivers smuggling aliens or controlled substances throughout the United States are in telephonic contact with co-conspirators immediately prior to and following the receipt of their illicit cargo, at which time they receive instructions on where and when to deliver it.. Both alien and drug smugglers generate many types of evidence including, but not limited to, cellular phone-related evidence such as images, video, text, and voice messages documenting their alien and drug smuggling and identifying other smugglers, and associates.

      14.    Based upon my training and experience as an agent, and consultations with law enforcement officers experienced in alien and drug smuggling investigations, I am also aware that:

      a.    Alien and drug smugglers will use cellular telephones because

5

they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.      Alien and drug smugglers will use cellular telephones because they are able to actively monitor and coordinate their activities including human trafficking, drug distribution, and the progress of their illegal cargo while the conveyance is in transit;

c.      Alien and drug smugglers will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.      Alien and drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.      Alien and drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f.      The use of cellular telephones by alien and drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address

book entries, IP addresses, social network data, and location data.

15.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am also aware that it is a common practice for alien smugglers to kidnap and ransom their clients. In these types of cases, a kidnapper will lure individuals with the promise of being smuggled into the United States. After isolating them under the pretense of being smuggled, the individuals are often tortured. The kidnappers often record or transmit audio or video of the victim, their capture, and their torture through cellphones to the family of the victims in an attempt to extort a ransom for their release. Kidnappings generate many types of evidence including, but not limited to, cellular phone-related evidence such as images, video, text, and voice messages documenting the kidnappings and identifying the victims and other kidnappers.

## FACTS SUPPORTING PROBABLE CAUSE

16.     On March 15, 2018, Border Patrol Agents detained CHAVEZ in Chula Vista, California. CHAVEZ had been seen walking to his vehicle, a burgundy Acura sedan. CHAVEZ was previously identified through DHS systems as an illegal alien residing in the United States. During his detention, agents asked if CHAVEZ would grant them consent to search his vehicle.

17.     CHAVEZ granted agents consent to search his vehicle. Agents searched the burgundy Acura and found that the trunk contained significant amounts of marijuana residue. Agents did not locate any marijuana residue in the passenger cabin of the burgundy Acura. In my experience, the presence of marijuana residue solely in the trunk is consistent with the use of the vehicle for transportation or trafficking of controlled substances. CHAVEZ was placed under

arrest at approximately 12:05 PM for being illegally present in the United States. CHAVEZ was in possession of the **Target Telephones** during his arrest. CHAVEZ and the **Target Telephones** were transported to the Imperial Beach Border Patrol Station for processing.

18.     CHAVEZ granted agents consent to search and store data from **Target Telephone 2** and **Target Telephone 3** and signed a DHS consent to search form. CHAVEZ did not grant agents consent to search **Target Telephone 1**. CHAVEZ stated that he had "personal things" stored in **Target Telephone 1**. During a cursory review of **Target Telephone 2** and **3**, a BPAI observed, multiple videos and pictures depicting drug smuggling or trafficking activities.

19.     In one video on **Target Telephone 3**, the BPAI saw three subjects wrapping suspected marijuana into bundles using green cellophane. These bundles were consistent with packaging commonly used by drug smugglers to transport controlled substances into the United States from Mexico. In another video, the BPAI saw someone cutting into a brick shaped bundle. As the subject cut through the layers of cellophane and foil, an organic plant based material was revealed. This packaging technique and the organic substance seen in the video was consistent with marijuana packaged for smuggling into or trafficking within the United States.

20.     Agents also found videos in **Target Telephone 2** depicting what appeared to be a potential kidnapping. The quality of the video indicated it could have been recorded on the phone it was stored in. The video depicted several men traveling in a vehicle. The vehicle stopped and three of the men got out wearing tactical or ballistic vests. The men then pulled out a fourth man from the vehicle.

The man that was pulled out had been stripped down to his undergarments and was bound by the feet and hands and appeared to be bleeding. The men in ballistic vests cut the bound man's leg restraints, and then forced him to remove his undergarments. They then shoved him away, as they made threats. The location of these events is unclear, but it appears to document the release of a kidnapping victim.

21.     The pictures and videos did not appear to be grainy, as is common with videos sent over messaging services or downloaded from the internet. The videos were stored in the photo album of the devices, and were of higher quality, thus indicating they may have been taken on the mobile device they were stored in. Additionally, agents found a video of large amounts of currency ostentatiously displayed next to bundles of suspected controlled substances. In my experience, the display and context of the videos were consistent with drug smuggling activity.

22.     Several of the pictures contained metadata indicating the location where the depicted events had taken place. These GPS coordinates corresponded to locations within San Diego County.

23.     Based upon my experience and investigation in this case, I believe that CHAVEZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to traffic, import, possess, and distribute marijuana. Based on my experience investigating drug smugglers, I also believe that CHAVEZ used the **Target Telephones** to document and coordinate with co-conspirators regarding the distribution, importation, and delivery of the controlled substances and to otherwise further these conspiracies both inside and outside the United States.

24.     Based upon my experience and investigation in this case, I also

believe that CHAVEZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to smuggle and/or kidnap individuals. Based on my experience investigating alien smugglers, and related kidnappings, I also believe that CHAVEZ used the **Target Telephones** to document and coordinate with co-conspirators regarding the kidnapping of individuals and to otherwise further these conspiracies both inside and outside the United States.

25. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which may identify other persons involved in narcotics trafficking activities.

26. Based upon my experience and training, consultation with other law enforcement officers experienced in alien and drug smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling/kidnapping and drug smuggling activities of CHAVEZ, and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## **METHODOLOGY**

27. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices,

can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to

11

seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

30. Based upon my experience and training, and the experience and training of other agents, with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN DATA

31. **Target Telephone 1** was not searched during CHAVEZ's arrest. Agents performed a cursory search of **Target Telephones 2** and **3** on the date of CHAVEZ's arrest, but did not perform a full download or forensic search.

## CONCLUSION

32.     WHEREFORE, I request that the court issue a search warrant for the property described in attachment A, to seize the evidence in attachment B.

33.     I swear the foregoing is true and correct to the best of my knowledge and belief.

Ehab Rahman
Border Patrol Agent


Subscribed and sworn to before me this ___3___ day of April, 2018.


Honorable William V. Gallo
United States Magistrate Judge, Southern District of California

13

ATTACHMENT A

PROPERTY TO BE SEARCHED

#1 BLACK APPLE IPHONE
MODEL: IPHONE A1660
FCC ID: BCG-E3085A

#2 WHITE HTC CELLULAR PHONE
MODEL: UNK SMARTPHONE
IMEI: 358869073036804

#3 BLUE LG CELLULAR PHONE
MODEL: UNK SMARTPHONE
IMEI: 353191-09-007944-3

Currently in the possession of the Department of Homeland Security, Customs and Border
Protection, United States Border Patrol, Chula Vista Border Patrol Station located at 311 Athey
Ave. San Diego, CA 92173.

## ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of Title 18 §§ 956 and 1201, Conspiracy to Kidnap and Kidnapping; and Title 21, §§ 841, 846, 952, 960, and 963, Conspiracy to Distribute, Distribution, Conspiracy to Import, and Importation of Controlled Substances:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data between September 15, 2017, and March 15, 2018:

    a. tending to indicate efforts to kidnap and extort individuals, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to kidnap and extort individuals, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in efforts to kidnap and extort individuals, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    d. tending to identify travel to or presence at locations involved in efforts to kidnap and extort individuals, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.